**Nos. 26-1374, 26-1375**

In The

# United States Court of Appeals for the Fourth Circuit

**PERDUE FARMS, INC.,**

*Plaintiff-Appellant,*

*v.*

**KEITH E. SONDERLING, in his official capacity as Acting U.S. Secretary of Labor, et al.**

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Eastern District of North Carolina
Nos. 24-cv-00477, 24-cv-00594 (Hon. Louise W. Flanagan)

**JOINT APPENDIX**

**VOLUME 1 of 3 | JA1-JA35**

(*Counsel listed on inside cover*)

Brett A. Shumate
*Assistant Attorney General*
Daniel Aguilar
David L. Peters
*Attorneys, Appellate Staff*
*Civil Division*
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 598-6735
david.l.peters@usdoj.gov

*Counsel for Government
Defendants*

Thad M. Guyer
T M GUYER & FRIENDS, PC
Government Accountability
Project
116 Mistletoe Street
Medford, OR 97501
(206) 941-2869
thad@guyerayers.com

*Counsel for Rudy Howell and
Craig Watts*

Gary W. Jackson
Attorney at Law
555 South Mangum Street
Suite 100
Durham, NC 27701
(919) 298-2722
gjackson@ncadvocates.com

*Counsel for Rudy Howell and
Craig Watts*

Megan Barbero
Courtney L. Dixon
Elizabeth M. Wilson
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
(202) 344-4540
mbarbero@venable.com

*Counsel for Perdue Farms, Inc.*

## TABLE OF CONTENTS[*]

| Docket, ECF No. | Description | Page No. |
|---|---|---|
| **Volume 1** | | |
| 5:24-cv-00477, 73<br>5:24-cv-00594, 67 | Order granting defendants' motions for summary judgment and to dismiss (Mar. 9, 2026) | JA1 |
| 5:24-cv-00477, 74 | Judgment (Mar. 9, 2026) | JA34 |
| 5:24-cv-00594, 68 | Judgment (Mar. 9, 2026) | JA35 |
| **Volume 2 (Watts)** | | |
| 5:24-cv-00477, N/A | District Court Docket Report | JA36 |
| 5:24-cv-00477, 6 | Complaint for declaratory and injunctive relief (Aug. 23, 2024) | JA48 |
| 5:24-cv-00477, 6-1 | Declaration of Roger A. Colaizzi in Support of Plaintiff Perdue Farms Inc.'s Complaint for Declaratory and Injunctive Relief and list of attached exhibits | JA75 |
| 5:24-cv-00477, 6-2 | Exhibit 1 to complaint: Notice of Whistleblower Complaint | JA77 |
| 5:24-cv-00477, 6-3 | Exhibit 2 to complaint: OSHA Findings | JA92 |
| 5:24-cv-00477, 6-4 | Exhibit 3 to complaint: ALJ Decision and Order dated Jan. 6, 2017 | JA97 |
| 5:24-cv-00477, 6-5 | Exhibit 4 to complaint:, Administrative Review Board Decision dated Mar. 5, 2019 | JA110 |
| 5:24-cv-00477, 6-6 | Exhibit 5 to complaint: Dept of Labor's Motion for Voluntary Remand | JA117 |
| 5:24-cv-00477, 6-7 | Exhibit 6 to complaint: Order Granting Motion for Remand | JA129 |
| 5:24-cv-00477, 6-8 | Exhibit 7 to complaint: FDA Amicus Brief | JA131 |
| 5:24-cv-00477, 6-9 | Exhibit 8 to complaint: Administrative Review Board Decision dated May 28, 2020 | JA181 |
| 5:24-cv-00477, 6-10 | Exhibit 9 to complaint: Supplemental Whistleblower Complaint | JA188 |
| 5:24-cv-00477, 6-11 | Exhibit 10 to complaint: ALJ Decision and Order dated Oct. 21, 2022 | JA214 |
| 5:24-cv-00477, 6-12 | Exhibit 11 to complaint: Respondent's Application for Subpoenas | JA233 |
| 5:24-cv-00477, 6-13 | Exhibit 12 to complaint: Order Quashing Subpoenas | JA389 |
| 5:24-cv-00477, 6-14 | Exhibit 13 to complaint: Respondent's Motion to Certify Interlocutory Appeal or to Reconsider | JA396 |
| 5:24-cv-00477, 6-15 | Exhibit 14 to complaint: Order Denying Motion to Certify Interlocutory Appeal or to Reconsider | JA411 |

---

[*] To avoid unnecessary duplication, this joint appendix includes exhibits the first time they appear in the record and omits duplicate exhibits refiled later in the record or that appear in both cases.

1

| | | |
|---|---|---|
| 5:24-cv-00477, 6-16 | Exhibit 15 to complaint: Respondent's Letter Requesting Conference and Stay | JA424 |
| 5:24-cv-00477, 6-17 | Exhibit 16 to complaint: Complainant's Response to Request for Conference and Stay | JA427 |
| 5:24-cv-00477, 6-18 | Exhibit 17 to complaint: Order Denying Conference and Stay | JA432 |
| 5:24-cv-00477, 6-19 | Exhibit 18 to complaint: Respondent's Motion to Dismiss | JA440 |
| 5:24-cv-00477, 6-20 | Exhibit 19 to complaint: Complainant's Opposition to Motion to Dismiss | JA466 |
| 5:24-cv-00477, 6-21 | Exhibit 20 to complaint: Order Denying Motion to Dismiss | JA472 |
| 5:24-cv-00477, 25 | Watts's Answer to Complaint (Dec. 4, 2024) | JA480 |
| 5:24-cv-00477, 50 | Perdue's Statement of Undisputed Material Facts (Feb. 19, 2025) | JA499 |
| 5:24-cv-00477, 51 | Appendix to Perdue's Statement of Undisputed Facts (Table of Contents) | JA508 |
| 5:24-cv-00477, 51-22 | Exhibit 22 to Appendix to Perdue's Statement of Undisputed Facts: Declaration of Roger A. Colaizzi | JA511 |
| 5:24-cv-00477, 56 | Government's Response to Perdue's Statement of Material Facts (Mar. 12, 2025) | JA515 |
| 5:24-cv-00477, 57-1 | Watts's Response to Perdue's Statement of Material Facts (Mar. 12, 2025) | JA524 |
| 5:24-cv-00477, 75 | Notice of Appeal (Apr. 1, 2026) | JA536 |
| **Volume 3 (Howell)** | | |
| 24-cv-00594, N/A | District Court Docket Report | JA539 |
| 5:24-cv-00594, 1 | Complaint for declaratory and injunctive relief (Oct. 18, 2024) | JA550 |
| 5:24-cv-00594, 1-1 | Declaration of Robert A. Colaizzi and list of exhibits | JA577 |
| 5:24-cv-00594, 1-2 | Exhibit 1 to complaint: Notice of Whistleblower Complaint | JA579 |
| 5:24-cv-00594, 1-4 | Exhibit 3 to complaint: OSHA letter dated Jan. 27, 2022 | JA599 |
| 5:24-cv-00594, 1-5 | Exhibit 4 to complaint: OSHA Findings | JA602 |
| 5:24-cv-00594, 1-6 | Exhibit 5 to complaint: Howell OSHA Objections and Restated Complaint | JA607 |
| 5:24-cv-00594, 1-7 | Exhibit 6 to complaint: ALJ Decision and Order dated Dec. 14, 2022 | JA633 |
| 5:24-cv-00594, 1-8 | Exhibit 7 to complaint: ALJ Scheduling Order dated Sep. 25, 2024 | JA644 |
| 5:24-cv-00594, 35 | Perdue's Statement of Undisputed Material Facts (Mar. 17, 2025) | JA650 |
| 5:24-cv-00594, 36 | Appendix to Perdue's Statement of Facts (list of exhibits) | JA660 |

2

| | | |
|---|---|---|
| 5:24-cv-00594, 36-18 | Exhibit 18 to Perdue's Statement of Facts: ALJ Order Granting Joint Motion to Stay | JA663 |
| 5:24-cv-00594, 36-19 | Exhibit 19 to Perdue's Statement of Facts: Declaration of Roger A. Colaizzi | JA667 |
| 5:24-cv-00594, 37-2 | Howell's Statement of Undisputed Facts (Mar. 17, 2025) | JA672 |
| 5:24-cv-00594, 43 | Government Defendants' Response to Perdue's Statement of Material Facts (Apr. 7, 2025) | JA686 |
| 5:24-cv-00594, 44-1 | Howell's Response to Perdue's Statement of Material Facts (Apr. 7, 2025) | JA698 |
| 5:24-cv-00594, 48 | Perdue's Response to Howell's Statement of Undisputed Facts (Apr. 28, 2025) | JA716 |
| 5:24-cv-00594, 69 | Notice of appeal (Apr. 1, 2026) | JA737 |

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| PERDUE FARMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor,[1] PAMELA KULTGEN, in her official capacity as an Administrative Law Judge of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR, and CRAIG WATTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 5:24-CV-477-FL |
| Defendants. | ) | |

- - - - -

| | | |
|---|---|---|
| PERDUE FARMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor, PAMELA KULTGEN, in her official capacity as an Administrative Law Judge of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR, and RUDY HOWELL, | ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 5:24-CV-594-FL |
| Defendants. | ) | |

---

[1]     The court has updated the case caption in each case to reflect substitution pursuant to Federal Rule of Civil Procedure 25(d).

# ORDER

These closely related cases are before the court on several motions, which the court hereby consolidates sua sponte for decision.

First, in case No. 5:24-cv-477 (the "Watts case"), the court resolves plaintiff's motion for summary judgment (DE 48), defendant Craig Watts's ("Watts") motion for summary judgment (DE 57), and the other defendants' motion to dismiss or, in the alternative, for summary judgment (DE 54).

Second, in case No. 5:24-cv-594 (the "Howell case"), the court determines plaintiff's motion for summary judgment (DE 23), defendant Rudy Howell's ("Howell") motion for summary judgment (DE 37), the other defendants' motion to dismiss or, in the alternative, for summary judgment (DE 41), and plaintiff's motion to strike (DE 49).[2]

The motions have been briefed fully and the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted. Plaintiff's fourth claim is dismissed without prejudice for lack of standing under Federal Rule of Civil Procedure 12(b)(1), as are some of the theories supporting plaintiff's fifth claim. The remainder of plaintiff's claims are dismissed. Plaintiff's motions are denied, except the motion to strike, which is terminated as moot.

## STATEMENT OF THE CASE

A.     The Watts Case

Plaintiff commenced this constitutional action by complaint filed August 20, 2024, corrected August 23, 2024. The complaint asserts five claims against all defendants: 1) violation of the Seventh Amendment to the United States Constitution; 2) violation of Article III of the United States Constitution; 3) violation of Article II of the United States Constitution; 4) violation

---

[2]     Throughout this order, the court refers to all defendants across both cases collectively as "defendants" unless otherwise specified.

JA002

of Article I of the United States Constitution; and 5) violation of the Fifth Amendment to the United States Constitution. Plaintiff requests the preliminary and permanent enjoining of proceedings against it before an administrative law judge ("ALJ"), and declaratory judgment to the same effect.

Plaintiff contemporaneously moved for a preliminary injunction. The district judge previously assigned to this case denied plaintiff's motion for a preliminary injunction on January 29, 2025. The parties filed the instant motions for summary judgment across February and March, 2025. The case was reassigned to the undersigned on August 19, 2025.

B.      The Howell Case

Plaintiff began the Howell case by complaint filed October 18, 2024, and contemporaneously moved for a preliminary injunction. The complaint asserts the same five claims against the same defendants, except with Howell substituted for Watts, and requests the same relief. The district judge previously assigned to this case denied plaintiff's motion for a preliminary injunction on January 29, 2025. The parties filed the instant motions for summary judgment across March and April, 2025. The case was reassigned to the undersigned on August 19, 2025.

**STATEMENT OF FACTS**

A.      Watts Case

Defendant Watts is a poultry farmer who owns and operates C&A Farms in Fairmont, North Carolina. (Gov's Watts Resp. SMF (Watts Case DE 56) ¶ 1).[3] Plaintiff is a poultry business which operates nationwide. (Id. ¶ 2).

---

[3]      Defendants' statements of material fact reproduce plaintiff's statements in full and then provide their responses. The court therefore cites to defendants' statements, as containing all parties' contentions in one place. The court cites to those portions of statements of material facts that are not "specifically controverted" by the opposing party, and thus "deemed admitted for purposes of the motion." Local Civil Rule 56.1(a)(2). The factual underpinnings

2

Plaintiff alleged, in the administrative proceedings recounted below, that it owns hatcheries and breeding flocks, and delivers chicks to independent contract growers such as Watts, who raise chicks until plaintiff removes the birds for slaughter. (Id. ¶ 3). Watts raised chickens for plaintiff under a written agreement, which renewed with each flock. (Id. ¶¶ 3–4). Either party had the authority to terminate the agreement with 90 days' notice, and Watts agreed to care for the chicks until their removal by plaintiff. (Id. ¶ 4).

For years, Watts complained about the amount of compensation he agreed to accept in this contract, "to no avail." (Id. ¶ 6). In May 2014, Watts invited to his farm a film crew from a third-party organization to film chicks on his farm, which were in "deplorable condition." (Id. ¶ 7). The third party then edited the footage into a video and released it to national news media coverage. (Id.).

Plaintiff alleged that the video demonstrated that Watts failed to comply with his contractual animal welfare responsibilities. (Id. ¶ 8). Plaintiff later alleged that it sent auditors and a third-party animal welfare entity, who determined that Watts was responsible for the conditions. (Id. ¶ 9). Relying on these third parties' report, plaintiff wrote a letter to Watts advising that he had to complete supplemental animal welfare and biosecurity training before the placement of a new flock. (Id. ¶ 10).

On February 23, 2015, Watts filed a whistleblower complaint with the Occupational Safety and Health Administration ("OSHA") alleging violations of employee-protection provisions under the Food Safety Modernization Act, 21 U.S.C. § 350g et seq. (the "FSMA") through retaliation.

---

of defendants' farms are not relevant to the legal issues involved in the instant motions, and plaintiff disputes all these allegations. The court therefore does not deem them admitted or rely upon them in any way in its decision, and states them here purely for needed context.

(Id. ¶ 11). Watts alleged he was subject to increased scrutiny, delays, and implementation of a performance improvement program. (Id.).

On February 8, 2016, an OSHA regional investigator found that Watts was not an employee of plaintiff, and his complaint was dismissed. (Id. ¶ 12). Watts appealed to the Office of Administrative Law Judges ("OALJ"), where plaintiff here moved to dismiss on grounds that Watts's claims were subject to the jurisdiction of the Department of Agriculture, not the Department of Labor ("DOL"). (Id.). On January 16, 2017, a DOL ALJ agreed and dismissed Watts's complaint. (Id.). Watts appealed to the DOL's Administrative Review Board ("ARB"), which affirmed. (Id.). Watts appealed to the United States Court of Appeals for the Fourth Circuit, but before briefing, DOL moved for remand to the ARB to permit the Food and Drug Administration to file an amicus brief. (Id.). The Fourth Circuit agreed and ordered remand on January 7, 2020. (Id.).

Before the ARB on remand, the Food and Drug Administration argued that live poultry raised on farms was food under the Food Drugs and Cosmetics Act for all purposes, and that poultry feed is food, so as to support DOL jurisdiction under the FSMA. (Id. ¶ 13). The ARB agreed, and remanded to the OALJ. (Id. ¶ 13). Plaintiff moved to dismiss in the OALJ on January 29, 2021, which motion remained pending through April 21, 2022, when the case was reassigned to defendant Pamela Kultgen, an ALJ ("Kultgen"). (Id. ¶ 14).

Watts filed a supplemental complaint on April 25, 2022, that requested relief including compensatory damages for lost earnings, general damages due to a hostile working environment and damage to his reputation, compensatory damages for loss of income incurred by delayed flock placement, wages paid to Watts's employee as a result of mandatory attendance at a training

4

session, and attorneys' fees and costs. (Id. ¶ 15). Kultgen denied plaintiff's motion to dismiss on October 21, 2022. (Id. ¶ 16).

On March 11, 2024, plaintiff applied for discovery of the video evidence at the heart of Watts's claims. (Id. ¶ 17). Kultgen denied this request on grounds that the OALJ lacks authority to issue subpoenas. (Id.).

On July 19, 2024, plaintiff apprised Kultgen of the Supreme Court's decision in SEC v. Jarkesy, 603 U.S. 109 (2024), and its intent to move to dismiss for lack of jurisdiction based thereon. (Id. ¶ 18). Plaintiff requested a conference call to discuss a briefing schedule and a temporary stay, which Kultgen denied on grounds she lacked the power and authority to decide constitutional questions, and would not grant any motion to dismiss on constitutional grounds. (Id. ¶ 18). Kultgen permitted plaintiff to file its motion for preservation purposes, and suggested removal to federal court. (Id.). Plaintiff filed its motion, which Kultgen denied on August 8, 2024. (Id. ¶ 19).

B.     Howell Case

Howell owns and operates the Robert Miller poultry farm in Fairmont, North Carolina. (Gov's Howell Resp. SMF (Howell Case DE 43) ¶ 3).[4] Howell raised poultry for plaintiff under a contract. (Id. ¶ 6).

Beginning in 2020, Howell invited public health and animal rights advocates onto his farm to observe and film allegedly deplorable conditions for the animals, plaintiff's alleged disregard therefor, and various forms of animal abuse, neglect, and cruelty which Howell attributed to plaintiff. (Howell's SMF (Howell Case DE 48) ¶¶ 8–23).

---

[4]     The court cites to the responsive statement of material facts in the Howell case for the reasons stated above with reference to the Watts case.

Eventually, plaintiff terminated its contract with Howell on August 20, 2020.  (Gov's Howell Resp. SMF ¶ 12).  In response, Howell filed a whistleblower complaint with OSHA against plaintiff, alleging violations of the FSMA.  (Id. ¶ 13).  Howell's complaint sought damages and injunctive relief.  (Id. ¶ 14).

On April 8, 2022, OSHA dismissed the complaint on grounds that Howell was not plaintiff's employee.  (Id. ¶ 16).  Howell appealed this ruling to the OALJ, and filed an amended complaint, seeking the same relief.  (Id. ¶ 17).  Discovery ensued, but Kultgen stayed proceedings pending the outcome of this action.  (Id. ¶ 19).  The parties agree that aside from the underlying facts, the administrative proceedings in the Howell and Watts cases are materially identical and present the same legal issues.  (Id. ¶ 20).

### COURT'S DISCUSSION

A.    Standard of Review

Where a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, plaintiff bears the burden of showing that federal jurisdiction is appropriate when, as here, challenged by a defendant.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[5]  Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint.  Bain, 697 F.2d at 1219.  Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge."  Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

---

[5]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

6

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the

7

necessary inference is so tenuous that it rests merely upon speculation and conjecture." <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 241 (4th Cir. 1982).  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture."  <u>Myrick v. Prime Ins. Syndicate, Inc.</u>, 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  <u>Id.</u> at 489-90.

B.    Analysis

The instant motions across the two cases present identical, but numerous, issues.  The parties dispute whether this court has jurisdiction over plaintiff's claims, whether the complaint is timely, and the merits of the claims.  The court addresses these issues in turn.

1.    Jurisdiction

The court evaluates its subject matter jurisdiction first.  Defendants contend that the FSMA's jurisdiction-limiting provision divests this court of jurisdiction to consider this action.  The court disagrees.[6]

Federal district courts generally have jurisdiction to evaluate "structural constitutional challenges" to "agency adjudications."  <u>Axon Enterprise, Inc. v. FTC</u>, 598 U.S. 175, 195 (2023).  Defendants therefore argue that the specifics of the FSMA divest this court of jurisdiction.

Congress enjoys plenary power to determine the jurisdiction of inferior federal courts and, indeed, whether such inferior courts shall exist at all.  <u>See</u> <u>Bowles v. Russell</u>, 551 U.S. 205, 212–

---

[6]    Before reassignment, the previously assigned district judge denied plaintiff's motion for a preliminary injunction because, among other reasons, defendants were likely correct on their jurisdictional arguments.  (<u>See</u> Order (Watts Case DE 43); Order (Howell Case DE 26)).  With the benefit of additional briefing from the parties, the court respectfully diverges now from this ruling.  <u>See</u> <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981) (holding that rulings made at preliminary injunction stage are not binding later in the case).

13 (2007).  Congress used this authority in the FSMA, which includes an explicit jurisdiction-stripping provision.  These provisions read as follows:

> **(5) Review**
>
> **(A) In general**
>
> Unless the complainant brings an action under paragraph (4), any person adversely affected or aggrieved by a final order issued under paragraph (3) may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation. The petition for review must be filed not later than 60 days after the date of the issuance of the final order of the Secretary. Review shall conform to chapter 7 of Title 5. The commencement of proceedings under this subparagraph shall not, unless ordered by the court, operate as a stay of the order.
>
> **(B) No judicial review**
>
> An order of the Secretary with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding.

21 U.S.C. § 399d(b)(5).

The FSMA thus includes what the Axon Court termed an "implicit" divestiture of jurisdiction, paragraph (A), which states that review shall be had in a federal court of appeals while omitting any mention of district courts, and an "explicit" divestiture, in paragraph (B)'s statement that review shall not be had in any other proceeding.  See Axon, 598 U.S. at 185.

These provisions together do not preclude district court review, however, because their plain text limits them to "final orders."  21 U.S.C. § 399d(b)(5)(A).  Paragraph (A) includes this limitation expressly, and paragraph (B) incorporates it by reference, by alluding to "an order . . . with respect to which review could have been obtained under subparagraph (A)[.]"  Id. § 399d(b)(5)(B).  Because only "final order[s]" are subject to direct court of appeals review under paragraph (A), only "final order[s]" fall within subparagraph (B)'s language concerning orders subject to review under paragraph (A).

No final order has issued here, in either case.  The ALJ's only orders in the Watts case denied motions to dismiss and for subpoenas, and that administrative adjudication is ongoing.  (See

9

Gov's Watts Resp. SMF ¶¶ 14–20). Substantially the same events have occurred in the Howell case, which is likewise ongoing, albeit under a stay. (Gov's Howell Resp. SMF ¶¶ 18–26). This suit is therefore not subject to the FSMA's explicit jurisdiction divestiture provision.

Defendants argue otherwise by citing cases in which courts held they lacked jurisdiction under explicit jurisdiction divestiture provisions. But in each, the pertinent statute was not limited to "final" orders. See Azimov v. DHS, No. 22-56034, 2024 WL 687442, at *1 (9th Cir. Feb. 20, 2024); CBW Bank v. FDIC, 769 F. Supp. 3d 1204, 1210–11 (D. Kan. 2025); Moats v. Nat'l Credit Union Admin. Bd., No. 3:23-cv-147, 2024 WL 1724721, at *3–4 (S.D. Tex. Apr. 9, 2024). These cases are therefore unpersuasive.

Nor does the statute implicitly divest the court of jurisdiction. To make this determination, the court evaluates three factors, drawn from the Supreme Court's decision in Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994), to determine whether particular claims are of the type Congress intended to be reviewed only within a statutory review structure. See Axon, 598 U.S. at 186; Bennett v. SEC, 844 F.3d 174, 178–79 (4th Cir. 2016) (discussing how to analyze these factors in more detail), abrogated on other grounds by Jarkesy, 603 U.S. 109.

These factors are 1) whether precluding district court jurisdiction would foreclose all meaningful judicial review of the claim; 2) whether the claim is "wholly collateral" to the statute's review provisions; and 3) whether the claim is outside the agency's expertise. See Axon, 598 U.S. at 185–86.

Two of these factors favor plaintiff's position. First, the Fourth Circuit will of course provide meaningful judicial review of a final order that may result from the administrative proceedings. But plaintiff's claims, regarding the very existence of the agency procedures to be used, is wholly collateral to claims under the FSMA. And third, the instant claims are outside the

10

agency's expertise, as agency adjudications are "generally ill suited to address structural constitutional challenges." Id. at 194–95. The Reich factors therefore point against implicit divestiture.

Finally, defendants gesture to the prudential consequences that would follow this determination in favor of jurisdiction in the district court, that a party could easily evade the FSMA's jurisdictional bar by challenging any ALJ decision that did not constitute a "final" order. The court is mindful of this concern, but is bound by Axon, Reich, and the plain text of the FSMA, which limits its divestiture provision to "final" orders.

The court thus concludes that neither explicit divestiture under the FMSA, nor implicit divestiture doctrine under Reich, ousts its jurisdiction over this case.

2.      Timeliness

Defendants next contend that plaintiff's claims are untimely.

This set of arguments need detain the court only briefly. All actions against the United States are subject to a six-year statute of limitations. 28 U.S.C. § 2401(a). Defendants therefore argue that plaintiff's claims in the Watts case are barred because plaintiff could have brought them as early as March 2016, when administrative proceedings began, subjecting them to a limitations deadline of March 2022, and rendering plaintiff's August 2024 complaint untimely.

But the continued enforcement of an unconstitutional statute refreshes the limitations period. See Nat'l Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1167 (4th Cir. 1991); Va. Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989). If the adjudicatory structure at issue here is unconstitutional, then under this principle, plaintiff is injured every day that administrative proceedings proceed, and with every decision the ALJ issues. Administrative proceedings have

11

continued to the present in the Howell case, and to August 8, 2024, in the Watts case, the last date the ALJ made a decision in those proceedings. (Gov's Watts Resp. SMF ¶ 20).

Nor did plaintiff lose its claims through laches or waiver. Defendants argue these doctrines apply because plaintiff failed to make its arguments until mid-2024. But the Supreme Court decisions underpinning plaintiff's claims, such as Axon and Jarkesy, were generally not decided until after 2020. Plaintiff could not have presented claims earlier than the decisions establishing the doctrines and holdings upon which such claims rest.

Plaintiff's complaint is timely, and it did not lose the ability to assert its claims through waiver or the doctrine of laches.

    3.    Merits

The court now turns to the merits of plaintiff's five claims, in order.

    a.    Claims One and Two: Seventh Amendment and Article III

Plaintiff argues that the DOL's adjudicatory structure violates its Seventh Amendment rights, the Supreme Court's decision in Jarkesy, and Article III of the Constitution. Defendants counter that these claims fail as a matter of law under the analytical framework established in Jarkesy to assess these issues. The court agrees with defendants.

Jarkesy instructs the court to apply a two-step framework to evaluate whether agency adjudications implicate the Seventh Amendment right to a jury trial. First, the court decides whether the structure implicates the Seventh Amendment at all. Second, the court decides whether a "public rights" exception to Article III jurisdiction applies. See Jarkesy, 603 U.S. at 120–21. Here, the structure at issue does not implicate the Seventh Amendment and, even if it did, the instant claims would fall within the public rights exception.

    i.    Implication of the Seventh Amendment

The Seventh Amendment applies to all suits which are not of equity or admiralty jurisdiction, whatever particular form they assume. Jarkesy, 603 U.S. at 122. The Seventh Amendment therefore extends to statutory claims that are "legal in nature." Id. To determine if a suit is "legal in nature," the court considers the cause of action and the remedy. Id. Because some causes of action sound in both law and equity, the remedy is the "more important" consideration. Id.

To determine whether a cause of action involves legal issues, the court must compare the statutory action to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1984).

Jarkesy held that administrative proceedings before the SEC were sufficiently analogous to common law claims of fraud to require a jury trial, because fraud was a well-worn common law term of art which Congress incorporated into the relevant statutes by its choice of that word. See Jarkesy, 603 U.S. at 125–26.

Here, Watts and Howell lodged claims under the FSMA's whistleblower protection provision. For the following reasons, while the cause of action is analogous to common law causes of action suggesting implication of the Seventh Amendment, the remedy portion of the test cuts strongly in the opposite direction.

The whistleblower protection statute here is similar to common law claims for wrongful discharge and breach of contract. This is an analogy in two steps: first, an FSMA whistleblower claim is equivalent to a modern wrongful discharge claim, which, second, is similar to an 18th century common law claim for breach of an employment contract. Although the Fourth Circuit has not addressed this issue, the Seventh Circuit in Lebow v. Am. Trans Air, Inc., 86 F.3d 661 (7th

13

Cir. 1996), and cases collected therein, held that an employee was entitled to a jury trial on his claim that his employer fired him for participating in union activities. See id. at 668. And indeed, Lebow relies upon other cases for the proposition that various other forms of wrongful discharge are sufficiently analogous to common law breach of employment actions. Id. at 668–69.

Defendants resist the first step of this analogy by arguing that whistleblower claims were not cognizable under 18th century common law. But neither were claims for discharge or other adverse actions based on discrimination, or for participation in union activities, which were criminal under 18th century English common law. See Terry, 494 U.S. at 565–66. Yet the Supreme Court has deemed the former to fall within the wrongful discharge umbrella, to qualify as analogous to common law causes of action for Seventh Amendment purposes. See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709 (1999); Curtis v. Loether, 415 U.S. 189, 195 (1974). Wrongful discharge based on discrimination, or in retaliation for participation in labor organization, is not meaningfully distinguishable from discharge for whistleblowing. Defendants simply argue that a link between the former and the latter is too attenuated. But at bottom, there is no meaningful difference between discharge based on discrimination, which was also not actionable in 18th century Great Britain, and discharge based on whistleblowing. Defendants present none.

The court thus turns to remedy.

Watts seeks compensatory damages for lost earnings resulting from the loss of his contract with plaintiff, damages for emotional distress suffered as a result of the loss of his contract and hostile working conditions, compensatory damages for the loss of income caused by delayed placements of flocks and for wages paid to an employee for mandatory attendance at a training session, attorney's fees and costs, injunctive expungement of a letter placing him under a

14

performance improvement plan, and all other relief available at law and equity. (Gov's Watts Resp. SMF ¶ 15). Howell seeks "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation, compensation for equipment and farm value lost, lost wages, bonuses, and additional payments, an injunction instructing [Perdue] not to retaliate or discriminate against [Howell] in any manner for his protected activity . . . or for pursuing this action, and an order that [Perdue] expunge [Howell's] record of any reference to the exercise of his rights under the [FSMA]." (Gov's Howell Resp. SMF ¶ 14). The injunctive relief requested in both complaints is plainly equitable, so the parties focus on the portions requesting forms of damages. E.g., SAS Institute, Inc. v. World Programming Ltd., 874 F.3d 370, 385 (4th Cir. 2017) ("an injunction is an equitable remedy").

"Money damages are the prototypical common law remedy." Jarkesy, 603 U.S. at 123. But what determines "whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo." Id.; see Tull v. United States, 481 U.S. 412, 422 (1987). Jarkesy held the SEC's remedies to be legal because they had strong retributive characteristics, such as the fact that recovery did not go to the victim, and that the statute conditioned monetary penalties on factors linked to a defendant's culpability and history of offending. See Jarkesy, 603 U.S. at 123–24.

The damages requested by Watts and Howell, by contrast, are equitable under this test, not legal. The FSMA characterizes the relief available from both DOL and in a judicial action as that needed to make the employee whole. See 21 U.S.C. § 399d(3)(B) (directing Secretary of Labor to "reinstate" employee and "restore the terms, conditions, and privileges" of employment); id. § 399d(4)(B) (directing court to "grant all relief necessary to make the employee whole, including injunctive relief and compensatory damages" including "back pay" and "compensation for any

15

JA016

special damages sustained as a result of the discharge"). The FSMA is thus a make-whole statute designed to restore a party to the position they held before the wrongful act of the defendant: "solely to restore the status quo." Jarkesy, 603 U.S. at 123.

Generally, monetary relief under such make-whole statutes related to employment, such as Title VII and the National Labor Relations Act, is equitable, and damages awarded under whistleblower statutes in particular are likewise equitable. See, e.g., West v. Gibson, 527 U.S. 212, 217 (1999) (reinstatement and backpay are equitable remedies); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48 (1937) (same); Deltek, Inc. v. Dep't of Labor, Admin. Review Bd., 649 F. App'x 320, 333–34 (4th Cir. 2016) (front-pay is an equitable remedy); see also, e.g., Walton v. Nova Information Sys., 514 F. Supp. 2d 1031, 1034 (E.D. Tenn. 2007) (collecting cases for equitable nature of back pay and holding that such remedies were equitable under the whistleblower protection section of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A).

Watts and Howell's claims are essentially for front and back pay, money they would have earned if not wrongfully withheld from them for alleged retaliation for whistleblowing. These remedies are, thus, equitable. E.g., Gibson, 527 U.S. at 217; Strickland v. United States, 32 F.4th 311, 365–66  (4th Cir. 2022) ("front pay . . . [is] an equitable remedy") All their remedies are for sums they would have received, or for compensation for injuries they would not have incurred, without plaintiff's allegedly wrongful conduct. These are remedies aimed at "restor[ing] the status quo." Jarkesy, 603 U.S. at 123.

Although the Fourth Circuit has not addressed this issue in the context of a whistleblower statute, comparison to cases applying the Sarbanes-Oxley Act is informative. In Schmidt v. Levi Strauss & Co., 621 F. Supp. 2d 796 (N.D. Cal. 2008), for example, cited by defendants, the court focused on the language "special damages sustained as a result of the discrimination" found in the

16

JA017

whistleblower protection section of the Sarbanes-Oxley Act.  Id. at 803; 18 U.S.C. § 1514A(c)(2)(C).  The court noted that this back pay is what "plaintiffs would have received had their employment not been terminated.  It is restitutionary in nature because it seeks to restore the plaintiffs to their status quo had the alleged retaliation not occurred."  Id. at 803–04.  Indeed, the special enumerated items, such as attorneys' fees and litigation costs, "all appear to be costs that the plaintiffs would be out-of-pocket because of the alleged wrongful discharge and which must be reimbursed to plaintiffs in order to make them whole.  They do not represent discretionary monetary relief which, by contrast, would be tried before a jury."  Id. at 804.

The FSMA parallels these features of the Sarbanes-Oxley Act exactly.  It provides for "compensation for any special damages sustained as a result of the discharge or discrimination, including litigation costs, expert witness fees, and reasonable attorney's fees."  21 U.S.C. § 399d(4)(B)(iii).  The FSMA limits recovery to that necessary to "restore the terms, conditions, and privileges associated with his or her employment," id. § 399d(3)(B)(ii), or to back pay and the passage cited in the previous sentence.  Id. § 399d(4)(B)(ii), (iii).

Although Watts and Howell pursue monetary relief under various formulations, the Seventh Amendment does not depend upon the "choice of words used in the pleadings."  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477–78 (1962).  All the relief sought by Watts and Howell is restitution-based, as all forms seek to restore the "terms, conditions, and privileges associated with [their] employment," 21 U.S.C. § 399d(3)(B)(ii), or what is clearly back and/or front pay, which are equitable remedies.  Gibson, 527 U.S. at 217 (reinstatement and back pay); Strickland, 32 F.4th at 365–66 (front pay).

Although plaintiff cites cases for the proposition that back pay can, in some circumstances, be a legal remedy, back pay in the FSMA is cabined by surrounding statutory language, which

17

JA018

limits it to restorative purposes.  The statute allows DOL to "reinstate the complainant to his or her former position together with compensation (<u>including</u> back pay), and [to] restore the terms, conditions, and privileges associated with his or her employment."  21 U.S.C. § 399d(3)(B)(ii) (emphasis added).  Back pay is listed with indisputably restorative, equitable remedies, demonstrating its confinement to that purpose.  <u>See</u> <u>Dubin v. United States</u>, 599 U.S. 110, 124 ("a word is known by the company it keeps").

Further, the FSMA lacks any punitive features whatsoever.

The <u>Jarkesy</u> court reached its holding on remedy primarily by concluding that, under its "restorative or punitive" test, the pertinent SEC statutes were overwhelmingly punitive.  The statutes conditioned sanctions on six factors, "several of which" concerned culpability, deterrence, and recidivism, thus tying availability of civil sanctions to the need to punish the wrongdoer, not the need to restore the victim.  <u>Jarkesy</u>, 603 U.S. at 123–24.  Similar considerations of retribution governed the size of the available penalty, and the "final proof" for the Court was that extracted penalties went to the SEC, not to the victims.  <u>Id.</u> at 124.  In contrast, the FSMA lacks any of these features, or indeed any link to retribution, deterrence, or recidivism at all.  As noted, the available remedies are all restorative, and the penalty is limited to the aggregate amount incurred by the complainant, thus tying relief to the restoration of the complainant, not punishment of the wrongdoer.  21 U.S.C. § 399d(3)(C).  Nowhere in the FSMA is any remedy tied to any retributive purpose.[7]

Plaintiff's arguments do not persuade.  First, plaintiff argues that all damages remedies are, by their nature, restorative, yet are generally considered to be legal in nature, not equitable.  But if

---

[7]    The section of the FSMA providing for attorney's fees is listed under the heading "penalty," but this label does not change the plainly restorative, equitable substance of the provision it heads.  21 U.S.C. § 399d(3)(C); <u>see, e.g.</u>, <u>United States v. Buculei</u>, 262 F.3d 322, 331–32 (4th Cir. 2001) ("the title of a statute cannot limit the plain meaning of the text").

18

this were dispositive alone, then front and back pay would always be legal remedies, contra Gibson, 527 U.S. at 217, and there would be no need for assessment of the purpose of monetary relief as Jarkesy requires.

Plaintiff also argues that backpay qualifies as equitable only if it is awarded as part of a larger, equitable remedy. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 218 (2002). But here, Watts and Howell seek such a remedy, pursuing what amounts to front and back pay plus injunctive relief. Plaintiff further contends that damages cannot be considered equitable unless they were typically awarded in equity courts, and faults defendants for failing to provide any authority showing that the damages Watts and Howell seek were awarded in equity courts. But plaintiff also provides no such authority to the contrary, so this argument does not sway the court in either direction.

Plaintiff also argues that the FSMA's remedies are legal because they are not expressly designated as "equitable," in contrast to other statutes. But as discussed above, the FSMA's remedies are equitable in substance, notwithstanding the absence of that magic word from the statute.

The court therefore concludes that while the cause of action here suggests implication of the Seventh Amendment, the remedy portion of the test cuts strongly in the opposite direction. The remedy part of the test is "the more important consideration." Jarkesy, 603 U.S. at 123. Indeed, Jarkesy itself deemed the remedy "all but dispositive." Id. Because the defendants prevail on the "more important" factor, the results of the relevant test favor them, and counsel against implication of the Seventh Amendment.

ii.     Public Rights Exception

Even if the Seventh Amendment is implicated here, the public rights exception applies.

19

Congress cannot confer the judicial power outside of Article III entities. <u>Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC</u>, 584 U.S. 325, 334 (2018). But to determine whether a proceeding involves the judicial power, courts distinguish between "public rights" and "private rights." <u>Id.</u> Public rights may be adjudicated by entities outside of Article III, and such proceedings need not be determined by a jury. <u>Id.</u> at 345.

A seemingly private right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary is a public right. <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 54 (1989). The public rights exception applies here.

The FSMA fits into this category. The FSMA augments the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 <u>et seq.</u>, the purpose of which is to "protect the public health" by, among other means, "ensuring that foods are safe, wholesome, sanitary, and properly labelled[.]" 21 U.S.C. § 393(b)(2)(A). This is clearly a weighty public purpose, and the FSMA establishes an elaborate regulatory scheme to prevent foodborne illness and other hazards. <u>See, e.g.</u>, 21 U.S.C. §§ 350g, 2201, 2225. This is a comprehensive and public regulatory scheme as <u>Nordberg</u> described. <u>See</u> <u>Nordberg</u>, 492 U.S. at 54.

Similar such rights, involving large-scale protection of the public health and safety through detailed regulatory schemes, have generally been held to implicate public, rather than private, rights. <u>See, e.g.</u>, <u>Sasser v. Administrator, U.S. EPA</u>, 990 F.2d 127, 130 (4th Cir. 1993) (applying public rights doctrine to civil penalties under Clean Water Act); <u>Yellow Freight Sys., Inc. v. Martin</u>, 983 F.2d 1195, 1200–01 (2d Cir. 1993) (highway safety proceedings under Surface Transportation Assistance Act); <u>Austin v. Shalala</u>, 994 F.2d 1170, 1177–78 (5th Cir. 1993) (overpayment of Social Security benefits). The public rights exception therefore applies.

20

JA021

Plaintiff's argument on this point is that Jarkesy overruled Nordberg, at least implicitly. Jarkesy did no such thing. Jarkesy conducted a detailed analysis of Nordberg's logic and holding, and concluded that "[Nordberg] effectively decides this case" on the public rights dispute. Jarkesy, 603 U.S. at 132–34. The Court certainly did not expand Nordberg, but nor did it overrule it. And even if there is tension between the two cases, only the Supreme Court may overrule itself, and its decisions "remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." Bosse v. Oklahoma, 580 U.S. 1, 3 (2016). Jarkesy did not overrule Nordberg, and unless and until the Supreme Court takes that step, Nordberg's analytical framework remains binding on this court.

Plaintiff also argues that Nordberg itself supports its position. That case considered a Seventh Amendment challenge to the Bankruptcy Code's assignment of fraudulent conveyance claims to bench trial. See Nordberg, 492 U.S. at 43. The Court concluded that such claims had lengthy and direct common law vintage which brought them within the Seventh Amendment. Id. at 43–49. Although the court has accepted plaintiff's linkage of Watts and Howell's claims to wrongful discharge claims at common law, Nordberg involved a claim with a much deeper common law pedigree. And plaintiff's position, that even the closest integration with a complex regulatory scheme which protects weighty public interests does not bring a claim within the public rights doctrine, is contrary to Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568 (1985), which held broadly that "integral part[s] of a program safeguarding the public health" as part of a "complex regulatory scheme" are public rights. Id. at 589; see also id. at 600 (Brennan, J., concurring) (noting that case arose "in the context of a federal regulatory scheme that virtually occupies the field," as the FSMA does).

21

Thus, even if Watts and Howell's claims implicate the Seventh Amendment, the public rights exception applies.

### iii. Article III Claim

Plaintiff's second claim for relief, for violation of Article III, rests upon the same reasoning as its Seventh Amendment claim just discussed, and plaintiff makes no meaningful independent argument therefor. The court therefore resolves this claim in the same way for the same reasons as above.

### b. Claim Three: Article II Removal Power

Plaintiff argues that the removal protections afforded to DOL ALJs violate Article II of the Constitution as construed in recent years by the Supreme Court.

Article II of the Constitution vests "the executive power" in the president. U.S. Const. Art. II, § 1, cl. 1. Under Article II, the Appointments Clause details the sole means of appointing "officers of the United States," a "class of governmental officials distinct from mere employees." K&R Contractors, LLC v. Keene, 86 F.4th 135, 143 (4th Cir. 2023). Only the president, with the advice and consent of the senate, may appoint such "principal" officers. Id. However, Congress may vest the appointment of "inferior officers" in the president, the courts, or the heads of departments. Id.

The president has "general administrative control" of those executing the laws. Free Enterprise Fund v. Public Co. Accounting Oversight Bd., 561 U.S. 477, 492 (2010). The president therefore generally enjoys the power to remove executive officers. Id. at 493. There are exceptions, however. As relevant here, congress may provide for-cause removal protections to certain inferior officers. Keene, 86 F.4th at 146. If these inferior officers are appointed by heads of department, removal authority rests with the relevant head, not the president. Id.

The Supreme Court has held that interposing two levels of for-cause removal protection between the president and an inferior officer violates Article II. In other words, restrictions on the president's power "to remove a principal officer, who in turn is restricted in his ability to remove an inferior officer," are unconstitutional. Id. at 483–84.

Plaintiff argues that DOL ALJs are inferior officers. The Fourth Circuit has held as such. See id. at 147.

In turn, DOL ALJs enjoy two layers of removal protection. They can be removed only by the Merit Systems Protection Board for good cause. 5 U.S.C. § 7521(a). And Merit Systems Protection Board members are removable by the president only for good cause. 5 U.S.C. § 1202(d). Thus, this structure appears to violate Article II, so requiring the court to sever the for-cause protections from the rest of the statute and hold only them unconstitutional. See Free Enterprise Fund, 561 U.S. at 508.

However, Keene held the opposite, and controls this claim. Keene held that, assuming the removal protections afforded to DOL ALJs are unconstitutional, a party must still suffer harm caused by the removal limitations to receive relief thereon.

Although a constitutional defect in the appointment of an inferior officer may strip such officer of the power to carry out the duties of office, a similar defect in the provisions governing such officer's removal poses no such issue. Keene, 86 F.4th at 149. In Collins v. Yellen, 594 U.S. 220 (2021), an eight-justice majority held that "the unlawfulness of the removal provision does not strip [an officer] of the power to undertake the other responsibilities of his office[.]" Id. at 258 n.23; see id. at 261 (Thomas, J., concurring); id. at 274 (Kagan, J., concurring). "Although the statute [in Yellen] unconstitutionally limited the president's authority to remove the [officers], there was no constitutional defect in the statutorily prescribed method of appointment[.]" Id. at

23

257 (majority opinion) (emphasis in original). The exercise of power by a lawfully appointed official with a defective removal regime is distinct from an official's "exercise of power that the actor did not lawfully possess," the problem which would exist were an official improperly appointed. Id. at 258.

Yellen and Keene therefore recognized only two situations in which an unconstitutional removal structure could "inflict compensable harm": 1) the president attempted to remove the officer but was prevented from doing so by a lower court decision holding he lacked cause for removal; or 2) the president had publicly expressed that he would remove the officer if not prevented by statute. Yellen, 594 U.S. at 259–60; Keene, 86 F.4th at 149. This principle controls the disposition of this claim, because plaintiff provides no record evidence of either such scenario.

Plaintiff nonetheless argues against this outcome on grounds that its complained injury is not any specific agency outcome, but rather its very subjection to proceedings before an ALJ protected by an allegedly unconstitutional removal protection.

Plaintiff relies principally on Axon for this point. But Axon addressed only subject matter jurisdiction issues surrounding proper forum, not whether the plaintiff there had suffered any actual harm on the merits. See Axon, 598 U.S. at 180 ("Our task today is not to resolve these challenges; rather, it is to decide where they may be heard."). This argument does not alter the conclusion, dictated by Yellen and Keene, that an unconstitutional removal arrangement must cause a plaintiff harm to be actionable, and that plaintiff here presents no evidence thereof.

If plaintiff argued that the DOL ALJs were unconstitutionally appointed, and if that argument was meritorious, its subjection to proceedings before such ALJ might inflict harm by subjecting plaintiff to the adjudicatory authority of a person never properly vested with the powers of office. But plaintiff does not claim or argue any defect in DOL's appointment procedures, in

24

either case.  (See Compl. (Watts Case DE 1) ¶¶ 70–77; Compl. (Howell Case DE 1) ¶¶ 71–78); Pl's Br. Supp. Watts (Watts Case DE 49); Pl's Br. Supp. Howell (Howell Case DE 34)).  Yellen announced clearly that a defect in a removal provision does not prevent an officer from exercising the powers of office, and is therefore not a compensable Appointments Clause injury.  Yellen, 594 U.S. at 258.

In addition to this reasoning from Yellen and Keene, defendants further present a robust consensus of nationwide authority rejecting this line of argument.  See, e.g., Leachco, Inc. v. Consumer Product Safety Commission, 103 F.4th 748, 757–58 (10th Cir. 2024); NLRB v. Starbucks Corp., 125 F.4th 78, 88–89 (3d Cir. 2024); CFPB v. Law Offices of Crystal Moroney, P.C., 63 F.4th 174, 180 (2d Cir. 2023); Calcutt v. FDIC, 37 F.4th 293, 316 (6th Cir. 2022), rev'd on other grounds, 598 U.S. 623 (2023).

Plaintiff argues against this conclusion by relying on the Fifth Circuit's decision in Jarkesy, which judgment the Supreme Court affirmed.  This reliance does not persuade.  The Fifth Circuit's opinion did not address Yellen or any attendant issue, and did not speak to the specific point plaintiff attempts to make.  See Jarkesy v. SEC, 34 F.4th 446, 463–65 (5th Cir. 2022).  And the Supreme Court granted certiorari only on the Seventh Amendment question, so the Fifth Circuit's Article II decision carries no special weight.  Finally, plaintiff relies upon Cochran v. SEC, 20 F.4th 194, 209–10 (5th Cir. 2021) (en banc), which concluded that a challenge to ongoing administrative proceedings such as plaintiff here presents is not controlled by Yellen.  See id. at 209–10, 210 n.16.  However, the majority opinion reached this conclusion through just two paragraphs of analysis, and over a seven-judge dissent.  See id.; id. at 243–44 (Costa, J., dissenting).  The court agrees with the Cochran dissent, and with Leachco, Starbucks, CFPB, and Calcutt, as more properly applying the command of Yellen.

25

That plaintiff's Article II challenge must fail is dictated by <u>Yellen</u> and <u>Keene</u>, and buttressed by the persuasively reasoned cases just cited.

c.    Claim Four: Nondelegation Doctrine

Plaintiff's next claim is that certain provisions of the FSMA violate the private nondelegation doctrine under Article I of the Constitution.  Plaintiff, however, lacks standing for this claim.[8]

Private nondelegation doctrine forbids the conferral of legislative power on private parties.[9] <u>See</u> <u>FCC v. Consumers' Research</u>, 145 S. Ct. 2482, 2508 (2025); <u>Carter v. Carter Coal Co.</u>, 298 U.S. 238, 311 (1936).  Thus, the delegation of regulatory authority to private persons "whose interests may be and often are adverse to the interests of others in the same business" is prohibited. <u>Pittston Co. v. United States</u>, 368 F.3d 385, 394 (4th Cir. 2004) (quoting <u>Carter</u>, 298 U.S. at 311).

On this basis, plaintiff contends that part of the FSMA violates this doctrine by allowing Watts and Howell to elect between an Article I agency, the DOL, and an Article III court.  The FSMA permits a complainant, but not a respondent, to bring an action in federal court within 90 days of receiving a written determination, or 210 days after the filing of the administrative complaint if the DOL fails to make a final decision in that time.  21 U.S.C. § 399d(b)(4)(A) (hereinafter the "forum election provision").

Standing under Article III is "a bedrock constitutional requirement" which serves to limit the powers of federal courts to adjudicate only cases and controversies. <u>FDA v. All. for Hippocratic Med.</u>, 602 U.S. 367, 378 (2024).  To establish standing to sue, "a plaintiff must

---

[8]    Because the court determined that plaintiff lacks standing for this claim, the court does not reach defendants' alternative argument that it fails on the merits.

[9]    Plaintiff clarifies in its briefing that it pursues this claim only under private nondelegation doctrine, not under public nondelegation doctrine.  (See Pl's Opp'n Br. (Watts Case DE 58) 33).

26

JA027

demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." Id. at 380. Because the second and third requirements are "often flip sides of the same coin[,]" the "two key questions" in most standing disputes are injury and causation. Id. at 380–81.

To create standing, an injury must be "concrete," meaning "real and not abstract." Id. at 381. "The injury must also be particularized," affecting the "plaintiff in a personal and individual way," rather than a "generalized grievance." Id. And "the injury must be actual or imminent, not speculative," and when a plaintiff seeks prospective injunctive relief, she "must establish a sufficient likelihood of future injury." Id.

Standing causation requires that the alleged injury be "fairly traceable" to the complained-of action. Libertarian Party of Va. v. Judd, 718 F.3d 308, 315–16 (4th Cir. 2013). "[T]here must be a causal connection between the injury and the conduct complained of." Dep't of Education v. Brown, 600 U.S. 551, 561 (2023).

Here, even if the forum election provision is unconstitutional, a question this court does not reach, neither Watts nor Howell has invoked it, so plaintiff has suffered no injury from it.

"Standing is not dispensed in gross; rather, plaintiff[] must demonstrate standing for each claim [it] press[es] and for each form of relief" that it seeks. TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021). Plaintiff must therefore establish standing specifically for this claim. It cannot do so. Neither Watts nor Howell has exercised, or attempted to exercise, the rights conferred by the forum election provision. Plaintiff does not argue otherwise.

Thus, plaintiff's claim against the forum election provision amounts to a mere general grievance that the statute is unconstitutional in the abstract. The Supreme Court has repeatedly

affirmed that such generalized grievances are not cognizable injuries under standing doctrine. See, e.g., Carney v. Adams, 592 U.S. 53, 58–59 (2020); Lance v. Coffman, 549 U.S. 437, 439 (2007) ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 573–74 (1992); Ex Parte Levitt, 302 U.S. 633, 636 (1937).

These cases govern plaintiff's private nondelegation claim. The forum election provision has not been invoked against, or otherwise injured, plaintiff. So, plaintiff's challenge thereto amounts to a disagreement with the forum election provision's existence as part of the United States Code. This is exactly the kind of purported injury the above cases hold cannot create standing.

Because plaintiff lacks standing to present its private nondelegation claim, dismissal without prejudice is warranted. Adams Outdoor Advertising Ltd. P'Ship v. Beaufort County, 105 F.4th 554, 566 (4th Cir. 2024) (holding that dismissal for lack of standing or any other subject matter jurisdiction defect must be without prejudice).

> d.      Claim Five: Due Process Clause

The court finally turns to plaintiff's Due Process claim. This claim rests upon several theories: 1) DOL ALJs lack power to issue subpoenas, which handicaps plaintiff's ability to defend itself; 2) DOL ALJs are not bound by the Federal Rules of Evidence; 3) DOL ALJs have power to waive rules or regulations governing their proceedings for good cause; 4) OSHA may join the case and thereby serve as both litigant and adjudicator; and 5) the FSMA vests only complainants with the right to remove the action to federal court following an adverse decision. For the following reasons, the first, second, and fourth theories fail on the merits, and plaintiff lacks standing to press the third and fifth theories.

With respect to the first theory, plaintiff relies upon Souch v. Califano, 599 F.2d 577 (4th Cir. 1979) for the proposition that its ability to defend itself is impermissibly handicapped because ALJs cannot issue subpoenas, preventing plaintiff from obtaining potentially favorable evidence. But this case instead favors defendants. Califano did not hold that an administrative adjudicator's inability (or refusal) to issue subpoenas itself violated due process, but that the adjudicator's reliance on the withheld evidence for its decision following such failure or refusal would. See id. at 580. Here, no ALJ has relied upon any information plaintiff would like to subpoena as grounds for any decision, and plaintiff does not argue otherwise.

Plaintiff next objects to the fact that the Federal Rules of Evidence do not apply to DOL ALJs' adjudications. 29 C.F.R. § 1987.107(d). However, the inapplicability of the Rules of Evidence to deportation proceedings and criminal sentencings, even in capital cases, where the most important interests in the legal system are at stake, does not offend the Due Process Clause. See United States v. Fulks, 454 F.3d 410, 436 (4th Cir. 2006) (holding that admission of hearsay at capital sentencing hearing would not violate Due Process Clause absent strong indicia of unreliability); Anim v. Mukasey, 535 F.3d 243, 256 (4th Cir. 2008) (that Federal Rules of Evidence do not apply to deportation proceedings is not a due process issue absent case-specific showings of, among other requirements, actual prejudice); see also, e.g., United States v. Mikos, 539 F.3d 706, 714–15 (7th Cir. 2008) (capital sentencing); United States v. Le, 327 F. Supp. 2d 601, 606–07 (E.D. Va. 2004) (same).

Plaintiff presents no authority for the proposition that the inapplicability of the Federal Rules of Evidence is, in itself, a violation of the Due Process Clause. The court is unwilling, in light of the above cases, to hold as such for DOL administrative adjudications.

Plaintiff also contends that OSHA's ability to join a case as a party, 29 C.F.R. § 1987.108(a)(1), violates the Due Process Clause by impermissibly combining the roles of litigant and adjudicator. However, such combination is not a due process violation in itself. Withrow v. Larkin, 421 U.S. 35, 58 (1975). Said fusion can violate due process, but only upon case-specific showings of actual unfairness caused by this structure. Id. Here, plaintiff acknowledges this standard, but fails to develop any argument or present any evidence that would support any such conclusions. (See Pl's Br. Supp. Watts at 34). This claim is therefore almost abandoned, but even if not, fails on the merits.

Plaintiff lacks standing to present its other two Due Process Clause theories.

Plaintiff first contends that DOL ALJs enjoy the power to waive rules or regulations for good cause. 29 C.F.R. § 1987.115. Notably, plaintiff omits this regulation's statement that an ALJ may not do so sua sponte. Id. ("may, upon application" (emphasis added)). But plaintiff lacks standing to challenge this section as violating the Due Process Clause. No ALJ has exercised the power provided by this section, nor has any party made an application therefor. Plaintiff does not argue otherwise.

Instead, plaintiff doubles down on its arguments that this structure is so unjust, so "slapdash," "biased," and "rank[ly] unfair" that standing is irrelevant. (See Pl's Opp'n Br. (Watts Case DE 58) 37; Pl's Opp'n Br. (Howell Case DE 47) 47). This is squarely contrary to a cornerstone of standing doctrine, that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Warth v. Seldin, 422 U.S. 490, 500 (1975); see, e.g., Ass'n of American Railroads v. Hudson, 144 F.4th 582, 589 (4th Cir. 2025) ("courts must not confuse standing with the merits"); Overbey v. Mayor of Baltimore, 930 F.3d 215, 229 n.14 (4th

30

JA031

Cir. 2019); <u>Covenant Media of S.C., LLC v. City of N. Charleston</u>, 493 F.3d 421, 429 (4th Cir. 2007). Plaintiff lacks standing to present this claim.

Last, plaintiff's fifth Due Process Clause theory is that the forum election provision is unlawful. Plaintiff lacks standing to press this claim under this theory for the reasons stated above.

In sum, three of plaintiff's Due Process Clause theories fail on the merits and are dismissed, and the other two fail for lack of standing and are dismissed without prejudice.

    4.       Motion to Strike

Plaintiff has moved to strike the declaration of Stephanie Ayers, filed in the Howell case, on grounds that it is improperly sworn. (Ayers Decl. (Howell Case DE 37-3)). The court has not relied upon this declaration in any way for its decisions above, and this motion is therefore terminated as moot.

<b>CONCLUSION</b>

For the foregoing reasons, the parties' motions are resolved as follows:

    1.       Plaintiff's motions for summary judgment (Watts Case DE 48; Howell Case DE 33) are DENIED.

    2.       Defendants' motions for summary judgment, and in the alternative to dismiss, (Watts Case DE 54, 57; Howell Case 37, 41) are GRANTED as follows:

        a.       Plaintiff's first, second, and third claims are DISMISSED,

        b.       Plaintiff's fourth claim is DISMISSED WITHOUT PREJUDICE for lack of standing,

        c.       Plaintiff's fifth claim is DISMISSED insofar as it rests upon theories of subpoena power, the Federal Rules of Evidence, and the fusion of litigant and adjudicator status,

31

JA032

d.    Plaintiff's fifth claim is DISMISSED WITHOUT PREJUDICE for lack of standing insofar as it rests upon ALJ power to waive rules and regulations, or upon 29 U.S.C. § 399d(b)(4)(A).

3.    Plaintiff's motion to strike the declaration of Stephani Ayers (Howell Case DE 37) is TERMINATED AS MOOT.

4.    The clerk is DIRECTED to close these cases.

SO ORDERED, this the 9th day of March, 2026.


_____
LOUISE W. FLANAGAN
United States District Judge

32

JA033

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| PERDUE FARMS, INC. | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGMENT** |
| | ) | No. 5:24-CV-477-FL |
| LORI CHAVEZ-DEREMER, in her | ) | |
| official capacity as Secretary of the United | ) | |
| States Department of Labor, PAMELA | ) | |
| KULTGEN, in her official capacity as an | ) | |
| Administrative Law Jude of the United | ) | |
| States Department of Labor, UNITED | ) | |
| STATES DEPARTMENT OF LABOR, | ) | |
| THE OFFICE OF ADMINISTRATIVE | ) | |
| LAW JUDGES OF THE UNITED STATES | ) | |
| DEPARTMENT OF LABOR, and | ) | |
| CRAIG WATTS | ) | |
|         Defendants | ) | |

**Decision by Court.**

This action came before the Honorable Louise W. Flanagan, United States District Judge, for consideration of the plaintiff's motion for summary judgment and defendants' motion for summary judgment and motion to dismiss.

**IT IS ORDERED, ADJUDGED AND DECREED** in accordance with the court's order entered March 9, 2026 and for the reasons set forth more specifically therein, it is ordered that defendants' motion to dismiss and motion for summary judgment are GRANTED.

**This judgment Filed and Entered on March 9, 2026, and Copies To:**
Margaret Santen / Kristin Koger / Mitchell Mirviss / Roger A. Colaizzi / Vanessa Garrido (via CM/ECF Notice of Electronic Filing)
Brittany Bruns (via CM/ECF Notice of Electronic Filing)
Stephani Ayers / Gary J Jackson (via CM/ECF Notice of Electronic Filing)

March 9, 2026                              PETER A. MOORE, JR., CLERK

      /s/ Sandra K. Collins
(By) Sandra K. Collins, Deputy Clerk

UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

PERDUE FARMS, INC. )
     Plaintiff, )
     )
v. ) **JUDGMENT**
     ) No. 5:24-CV-594-FL
LORI CHAVEZ-DEREMER, in her )
official capacity as Secretary of the United )
States Department of Labor, PAMELA )
KULTGEN, in her official capacity as an )
Administrative Law Jude of the United )
States Department of Labor, UNITED )
STATES DEPARTMENT OF LABOR, )
THE OFFICE OF ADMINISTRATIVE )
LAW JUDGES OF THE UNITED STATES )
DEPARTMENT OF LABOR, and )
RUDY HOWELL )
     Defendants )

**Decision by Court.**

This action came before the Honorable Louise W. Flanagan, United States District Judge, for consideration of the plaintiff's motion for summary judgment and defendants' motion for summary judgment and motions to dismiss.

**IT IS ORDERED, ADJUDGED AND DECREED** in accordance with the court's order entered March 9, 2026 and for the reasons set forth more specifically therein, it is ordered that defendants' motions to dismiss and motion for summary judgment are GRANTED.

**This judgment Filed and Entered on March 9, 2026, and Copies To:**
Margaret Santen / Kristin Koger / Mitchell Mirviss / Roger A. Colaizzi / Vanessa Garrido (via CM/ECF Notice of Electronic Filing)
Brittany Bruns (via CM/ECF Notice of Electronic Filing)
Stephani Ayers / Gary J Jackson (via CM/ECF Notice of Electronic Filing)

March 9, 2026       PETER A. MOORE, JR., CLERK

            /s/ Sandra K. Collins
           (By) Sandra K. Collins, Deputy Clerk